And our next case for argument this morning is United States v. Thomas Barfield. Mr. Henderson. Good morning. May it please the Court. My name is Peter Henderson. I'm here on behalf of Thomas Barfield. There is a factual dispute in advance of sentencing. We had evidence both ways as to the drug amount. On the one hand, one witness had said it's between $1,000 and $3,000 per day in drug quantity. Two other witnesses said, eh, we really think it's more like $1,000, one bundle a day versus two bundles a day. The way that we resolve those disputes to ensure that sentences are based on reliable evidence is through Rule 32, which directs the judge to rule on the dispute, or if it's not material to sentencing, the judge can say so and say, I see both sides of the evidence. It's not material to my decision, so I don't need to make a ruling. And the judge here didn't do either of those. The district court really made some, I think, troubling remarks in trying to sort through the parties' positions that indicated it didn't really understand the parties' positions. We really just, I mean, this should have been resolved through evidence. If the government says it's two bundles a day, have a witness testify about, give us some context of why it's two bundles a day. The only thing we have is one statement in front of a grand jury that is, I mean, 1,000 to 3,000 is a tremendous range. Don't we have co-defendants' statements as well? We have co-defendants' plea agreements. And it's perfectly permissible for a district judge to say, look, I've sentenced these people. They came in front of me in court. I asked them, is this an accurate, you know, is this your best estimate of the drug quantity? And so I credit those statements. I find them credible. That's essentially what happened in the Krasinski case. The district court didn't do that here, though, right? It's one thing to say a district court does not clearly err in crediting statements from plea agreements, but it's another thing to say that a district court can say nothing about the evidence, and we just assume that, well, that must have justified the decision. Because there are a lot of problems with the plea agreements. I mean, I spent a lot of time in the reply brief talking about why we shouldn't really credit those. It's really a trial court argument. Did the district judge rely on the PSR that gave the drug calculation? Oh, absolutely. He did. That's right. And the problem with the PSR is that that presents the government's version of the offense. Mr. Barfield came forward in a very detailed sentencing memorandum and said, these are objections that are also founded on evidence. You need to sort out the dispute. And the judge didn't do that. I mean, the judge came into sentencing thinking Mr. Barfield was responsible for 124 kilograms of heroin, which is a bit alarming, asked some sort of irrelevant questions, and then summarily announced that it just adopted the PSR. Again, this case is very much about the facts more than legal standards. You can imagine a case where the defendant just says, I object to that figure, offers no evidence, offers no reason to doubt what's in the PSR. In that case, a district court could say, well, the PSR sets out what the drug quantity is. I accept it. That's my finding. That would be sufficient. It's the facts of this particular case that render the procedure that happens below unreasonable because there was a factual dispute to be resolved, and it made a big difference. Really, the only thing the judge said in support of this 27-year sentence was that he thought this was serious conduct. It's the seriousness of the offense. And the seriousness of the offense in federal law for drug offenses is what's the quantity. And based on Mr. Barfield's calculation, what was the sentencing guideline range? The sentencing guideline range wouldn't change. It's 360 to life regardless. But I think there's a big difference. I think most judges would find a big difference between someone who's distributed 8 kilograms versus 16 kilograms. And 8 was Mr. Barfield's number. I think that's about right. I mean, it's a little hazy. The evidence that actually recovered is less than a kilogram, so all of this is guesswork. But that, again, gets me to the other thing that really troubles me about this is we all know that we can account for relevant conduct. But what the court has made a point of, especially in recent years in Helding and Gibbs, et cetera, is that the evidence has to be reliable. If we haven't recovered any drugs, we can estimate, but it has to be a reliable estimate. And one of the things that I very much disagree with in the government's calculation is assuming that one statement saying 1,000 to 3,000 means, well, conservatively about 2,000. That's not how we do these reviews. The table was interesting in that respect. Right. I mean, you know, that's just not a sound, reliable way to determine. The conservative estimate, and Mr. Barfield didn't dispute it, is to say, yeah, take the lower estimate, 1,000 a day multiplied by 124. You didn't recover any of those drugs, but that's how our system works. That's a conservative, reliable estimate. But if you want to establish more than that, especially in light of the fact that two witnesses also said 1,000 a day, you need more evidence. What do we do with the argument that this was harmless? You mentioned that the range would have been the same, irrespective. If we were to find the drug calculation, this was harmless. This was a harmless error. Well, there are, I think, two things. One, I think Helding contains some pretty powerful language about the fact that drug quantity is an important factor in sentencing. And having a reliable drug quantity is, if it serves as the basis of the sentence, which it apparently did, then it can't be harmless to incorrectly make that calculation. But the other thing is, so harmless error is a doctrine where the government bears the burden of persuasion on appeal. And it gets to really our second argument, which is there's nothing in the record to indicate this is harmless. The district court, again, under Rule 32 or under 3553A, could have said something like, I understand that you were operating a coroner, you were overseeing a coroner. Whether it's 8 kilograms of heroin, whether it's 16 kilograms of heroin, it's a serious offense. My sentence is not based on the particular quantity but is based on my overall assessment of this operation. Then the error would be harmless. Instead, we have very terse remarks. We have, I agree with you on your two mitigating factors. The offense is serious. It needs to deter 27 years. So harmless error doesn't really work in this appeal because there really is very little record to indicate why the district court chose 27 years. As a factual matter or evidentiary matter, that's perhaps a more precise way to put it, we're dealing with a battle of plea agreements basically here, right? There certainly wasn't any live testimony offered. And it's really a matter of resolving which statements in which plea agreements are more reliable. I'm not quite sure how that's done. Right. I mean, I think so the plea agreements are more emphasized on appeal. Really, there were three pieces of evidence. There was a grand jury statement by Keira Walls. That's the 1,000 and 3,000. And there were two proffer statements by Sherelle Thompson and Nicole Green, which support Mr. Barfield's position. All of those were pursuant to cooperation agreements. The language in the plea agreements was drafted by the government, and it's a summary 12.4 kilos. If I were a district judge, I wouldn't give that a lot of weight because it was drafted by the government. Everybody agreed to it to either plead to a lesser included charge or to get cooperation. But a judge could credit it. This judge didn't. And essentially, I think what the government's asking is for this court to find in the first instance that we find, we place stock in those plea agreements, we find them credible as a matter of fact. Our position is the district court should do that on remand rather than this court independently assessing that. I'll save the remainder of my time. Thank you. Ms. Raju. Good morning, Your Honors, and may it please the court. My name is Sushma Raju, and I represent the United States. The balance of the evidence in this case is that there were ten people involved in the drug trafficking ring. Eight of those people made sworn statements to the district court in varying ways, supporting the two-bundle-a-day quantity calculation. But what do we do? We don't usually dig all the way back to the raw evidence in a sentencing hearing. We ask the district court to offer a reasoned explanation, and it's hard to see that here. So the district court made a ruling at the end of the argument about the direct quantity objection that there was enough information and reliable evidence. I think that— What's the district court's basis? I think the district court, as the parties agree, is that it's adopting what's in the PSR, which, of course, has also attached the government's version. But the district court didn't say that, actually, just to be picky about it. You're drawing that out of the record. I read this whole huge thing, and it's just not there. That's right. There's not an express statement that the district court was adopting. The statement's included in the PSR. And was the district court aware of the objections that had been made to those statements? Why did the district court resolve those concerns the way it did, even if that was a way? But why did this judge do that? Absolutely, the district court was aware of the objection. The sentencing hearing began with the oral argument from defense counsel about the objection. Oh, I know, with all this mixture, 124 kilos and 16, and it was fentanyl. He's all over the block at the beginning. That's fair. There are some questions that are asked. But actually, I would say the argument begins with defense counsel getting up and saying, it's actually one bundle a day, not two. And the first question that the district court asks right out of the gate— Where in the record does the district judge lay out the reasoning for why he accepted the government's version? I would be happy to get the page for your honors, but I think that there isn't a dispute that the ruling that he made is pretty concise there, where he says that there is enough information and reliable evidence. The government would call it conclusory if it were on the other side. It is short. It is short. I will admit that. But I think to get to the point of what the balance of the evidence here is, is that it's not just the statement of Ms. Walls and then the two proper statements from the other co-defendants who were operating. I think the plea agreements should be given the weight because those co-defendants came before the same court that sentenced this defendant and said that the statements and the factual basis of the plea agreement were true and accurate. What's the reliable evidence that suggests that the plea agreements should have been used in that way? I'm sorry, Your Honor. Could you repeat the question? You indicated that the plea agreements themselves, that's the evidence that the district court could have relied on or relied on in making that determination. That's correct. And during the sentencing hearing, the Assistant U.S. Attorney mentioned that each of those co-defendants who had come before the district court had made those statements in their factual basis. So that was part of the discussion before the district court for supporting the two-bundle-a-day calculation. So, and I think that the questions that Your Honor's asked of defense counsel are indicative of the fact that a key issue here is that regardless of which calculation you choose, the one-bundle-a-day or the two-bundle-a-day, we are left with a situation where there is no change in the guidelines. I think we're kind of backing up even under the Rule 32 that says the judge must support their rulings on factual disputes with findings on the record. Sure. And Rule 32 imposes a minimal burden, and I think this court has previously found that there aren't any magic words, quote-unquote, that need to be used to satisfy that. What Rule 32 requires is that there is a clear ruling asked to the defendant's objection. And I think that we have that here because there is no question about what the district court decided. The district court was clear that the defendant was accountable for more than 16 killings. Well, I think we have argument. I'm asking, and still kind of going back to Judge Wood's question, where is the reasoning? I have argument from defense. I have argument from the government. Where did the judge lay out factual findings? So there aren't any expressed factual findings there beyond the fact that there's the 16 kilograms of heroin. But then following that, the judge makes it a point to say that it's not just this daily amount of sales that's happening at the drug spot. There is also other quantities that were kept in inventory, and that was part of the discussion. And I would say that those are not irrelevant questions because although we're focused on the one bundle versus two bundle, it's also relevant that there were other quantities of drugs that were involved in this calculation. So I think going back to the harmless error point, unless anyone has any other questions, I think because here the guidelines do not change, there's no dispute to that fact, what we would be left with on remand is the same guidelines range of 360 months to life, the same aggravating and mitigating arguments. But a different factual posture for 3553A. I think that I would disagree that a reference to the serious nature of the offense is automatically and exclusively a reference to the quantity of drugs that's involved. Referencing the serious nature of the offense takes many other things into account. For example, the district court made it a point to note that although the defendant expressed some remorse during his allocution, he didn't make any reference to the victims in this case, meaning the purchasers of the narcotics. And that comment didn't happen in a vacuum. The government had made it a point during its 3553A argument to say that even if you credit the one bundle day calculation, you're still left with 120 to 140 user quantities of heroin each day. That's very serious, and I don't think that anyone's really disputing the fact that this crime is serious, regardless of which quantity that you credit. And finally, with regard to the explanation that was provided by the district court for the sentence on count one, there is a lot more in the record than the defendant would plead you to believe. Of course, there is the mention of the serious nature of the offense, but there is also a significant discussion of the mitigating factors that were presented by defendant during the sentencing hearing, namely his difficult childhood, the substance abuse issues in his family, some of the other significant challenges that he experienced while he was growing up. All of those things, and the defendant's mother's testimony, are things that the district court noted immediately when it was pronouncing its sentence. It ran through those things. It also talked about the aggravating factors of the criminal history, which the district court had closely examined, and the need for general and specific deterrents. So after doing all of those things, we reached the 324-month sentence. There's not an exhaustive run-through of every 35-50 degree factor, but that's not what this court requires the district court to do. And there was also adequate addressing of the principal mitigation arguments that the defendant put forth. The arguments that defendant has claimed were passed over or given short shrift are what this court has called stock arguments, specifically sentencing disparities and the guidelines overstating the defendant's criminal history. So if there are no further questions, I would ask this court to affirm the evidence. I want to ensure that the government is conceding that the 20-year sentence for the money laundering exceeds the 10-year statutory maximum. That's correct. There is also, I think, no dispute that there is not an effect on defendant's substantial rights, but it does exceed the statutory maximum. Thank you. Thank you. Mr. Henderson. I, again, just wanted to highlight what I see as the unique facet of this case, which is just how much Mr. Barfield's arguments were substantiated and were thought through and were developed in the sentencing memorandum and at sentencing. I think that that helps inform how we see the district judge's response to it. A stock argument that might be a sentence in a sentencing memorandum, maybe that's not enough. Arguments that occupy pages and pages that are supported with citations to authority and the facts of the case, we would expect to see a little bit more than the offense is serious, therefore 27 years. So our main complaint here is Mr. Barfield is in prison for 27 years. We don't really know why the judge chose the drug quantity he chose, and we don't really know why the judge chose the 27-year sentence. We think that's a violation of the relevant sentencing laws, so we'd ask to reverse. Thank you. Thank you. Our thanks to all counsel. The case is taken under advisement.